IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4884
_____


RAYMOND LOUIS BENDER,

Plaintiff-Appellant,

versus

JAMES A. BRUMLEY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

(August 24, 1993)
ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC
(Opinion July 12, 5th Cir. 1993, _____ F.2d _____)


Before REYNALDO G. GARZA, WILLIAMS, and JONES, Circuit Judges.

JERRE S. WILLIAMS, CIRCUIT JUDGE:

On petition for rehearing filed by defendants-appellees, we
withdraw our previous opinion dated July 12, 1993, and substitute
the following opinion in its place:


This 42 U.S.C. § 1983 case asserts the police used excessive
force in dealing with a pre-trial detainee.  The critical, narrow
issue before us is whether it was reversible error for the district
court to instruct the jury that it must find that Raymond Bender
suffered "significant injury" before it could return a verdict in

his favor. We conclude that the jury was inescapably misguided by the instruction, which ran afoul of the Supreme Court's recent decision in Hudson v. McMillian, -- U.S. --, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), as explicated by this Circuit in Valencia v. Wiggins, 981 F.2d 1440, 1443-47 (5th Cir.), *cert. denied,* 61 U.S.L.W. 3852 (1993). Accordingly, we remand Bender's federal excessive force claim to the district court for a new trial. We affirm the judgments entered against all his other claims.


I.   FACTS AND PRIOR PROCEEDINGS

On February 20, 1989, Raymond Louis Bender surrendered himself as a suspect in the killing of Deputy Jimmy Kinney of the Sabine Parish Sheriff's Department. Deputy Kinney had been killed by a single shotgun blast to the chest as he sat in his patrol car a few hours earlier.[1]


Later that day, Bender was taken from his cell at the Sabine Parish jail and escorted by Deputy Jack Staton to the interrogation room where they were met by Staton's fellow defendants, Deputies James McComic and Joe Byles, and Officer David Remedies of the Zwolle Police Department. What transpired inside the interrogation room is vigorously disputed. The officers maintain that Bender grew erratic at various times during the questioning and began flailing his arms; a brief scuffle ensued, and the officers used

---

[1] Bender was subsequently convicted of first degree murder and sentenced to life imprisonment without the possibility of probation, parole, or pardon.

2

minimal force to restrain him.  The Defendants acknowledge that everyone in the room was upset, but they emphatically deny that unreasonable force was used or that a beating took place.  The officers urge that Bender's claims of physical abuse are belied by his failure to seek medical attention until May 1990, more than fifteen months following the alleged mistreatment, and then for an ailment wholly unrelated to the alleged beating.

Bender asserts, on the other hand, that upon his invocation of his Fifth Amendment right to remain silent, Deputy McComic threw hot coffee in his face to compel him to speak and hit him on the head, knocking him to the floor.  While on the floor, Bender claims that Deputy Staton managed several blows and kicks before dragging him out of the room by his hair.  Outside the room, Bender contends the beating continued -- Staton smacked him between the eyes, knocking him again to the floor, and Officer Remedies hit and kicked Bender's head and rear.  At this point, says Bender, McComic admonished Staton and Officer Remedies to stop striking Bender with closed fists because that might cause severe injuries.  Staton then stomped on Bender's back before he was taken back into the interrogation room where Deputy Byles saw Bender's bloody nose and asked what had happened.  Bender claims that McComic responded that Bender had fallen off the stairs, whereupon Byles called Bender a nigger and threatened to shoot him if he tried to run away.

Bender also maintains that Remedies made a statement that he saw Staton hit Bender, and emphasizes that a Louisiana state court judge testified at trial that when she, as an assistant district attorney for Sabine Parish, questioned Remedies about the incident, he told her that Staton struck Bender "once or twice."[2] Moreover, Bender insists, witnesses can verify that he "looked kind of roughed up" after his trip to the interrogation room. He claims that his nose bled profusely and felt as if it were broken, that he lost complete feeling in his legs, and that two officers had to hold him up as he returned to his cell. Additionally, he asserts that he and/or his family repeatedly requested medical attention, which was at all times refused. For their part, however, the Defendants presented witnesses who refuted Bender's claims of threats and physical abuse.

Exactly one year from the date of Bender's arrest for Deputy Kinney's murder and the alleged beating, Bender filed suit against the four officers and Sheriff James Brumley asserting various causes of action arising under the U.S. Constitution, 42 U.S.C. §§ 1983 and 1985(3), and Louisiana state law. At trial's end, the jury was asked a series of questions. Regarding Bender's federal claims, the jury was asked whether McComic, Staton, and Remedies used excessive force and whether Sheriff Brumley withheld medical

_____

[2] Later the same day, Officer Remedies telephoned the then-assistant district attorney to modify his earlier statement. Remedies stated that a scuffle occurred, but he was not certain that Staton had struck Bender.

4

care. Regarding Bender's pendent state law claims, the jury was asked whether any of the five defendants used excessive force as defined under Louisiana law or intentionally inflicted emotional distress. The jury rejected Bender's plea for compensatory and punitive damages and returned a verdict completely exonerating the officers.[3] Judgment was entered, and Bender timely appeals the dismissal. He claims three principal grounds. He argues that the district court erred in (1) denying his motions for summary judgment and directed verdict, (2) admitting potentially prejudicial testimony concerning Deputy Kinney's murder, and (3) instructing the jury that proof of significant injury was necessary to support a valid § 1983 claim. We address these contentions in turn.

## II. DISCUSSION

### A. The Denial of Bender's Motions

Prior to trial, Bender filed a motion for summary judgment on his federal claims of excessive force and deprivation of medical attention. Noting that "[t]he testimony of both camps is diametrically opposed," the district court denied the motion, but partially granted Defendants' Motion for Dismissal or Alternatively for Summary Judgment by dismissing all claims for verbal threats

---

[3] The issue of qualified immunity, which the district court elected to carry with the case to trial, is not before us on appeal.

and harassment.[4]  At the close of the officers' evidence at trial, Bender sought a directed verdict as to his pendent state law claims of excessive force and intentional infliction of emotional distress.  This motion, too, was denied.

On appeal, Bender persists that the savage beating he endured was supported by "concrete proof" and that the trial court's refusal to grant his motions was error in the face of "the objective physical evidence."  Bender argues strenuously that a review of the entire record shows that,

> any reasonable jury *could have found* that Appellees in an act of vengeance maliciously and sadistically used excessive force against him in the guise of coercing a confession; Appellant suffered physical pain, emotional distress, and mental anguish; Appellant was denied medical treatment for a period of fifteen (15) months following the assault; and the actions of the Appellees violated both state and federal laws.  (emphasis added)

Bender concedes, however, that conflicting evidence was presented from which contradictory inferences could have been drawn.  The district court properly denied both motions.

As to the motion for summary judgment, the governing standard is well settled.  Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to

---

[4] Mere allegations of verbal abuse do not present actionable claims under § 1983.  "[A]s a rule, 'mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'"  McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)(quoting Coyle v. Hughes, 436 F. Supp. 591, 593 (W.D. Okla. 1977)).

judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also, e.g.*, Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In determining whether the district court's denial was proper, we review the court's decision *de novo* and consider all of the record evidence and the inferences drawn therefrom in the light most favorable to the non-movant officers.  Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir. 1988).

In its memorandum ruling denying the summary judgment, the district court carefully assessed Bender's evidence and recognized that testimony in the record squarely contradicted his claims. Specifically, the court noted that Bender's motion *itself* included as exhibits from the prior criminal prosecution the officers' sworn denials that a beating or other mistreatment took place.  The district court properly concluded that "[t]his testimony is more than sufficient to create a genuine issue of material fact which must be resolved by the jury."  This case obviously cannot be viewed as "so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

As to the motion for a directed verdict, Bender fails to discuss in his appellate brief the court's denial of his directed verdict motion.  It is well settled that the failure to argue an issue posed for consideration is deemed an abandonment of that issue.  *E.g.*, Harris v. Plastics Mfg. Co., 617 F.2d 438, 440 (5th

7

Cir. 1980)(per curiam); FED. R. APP. P. 28(a)(4). Accordingly, we do not review the district court's directed verdict decision.[5]

We also consider Bender's related argument, listed separately in his brief, that the jury's verdict "is against the law and the clear weight of the evidence."  This is essentially an argument contesting the sufficiency of the evidence, which we assess in the light most favorable to the jury's verdict.  Wilson v. Monarch Paper Co., 939 F.2d 1138, 1139 (5th Cir. 1991).  At the conclusion of defendant's case, Bender moved for a directed verdict on his state law claims only.  A cursory review of the evidence rebutting Bender's state law claims supports the district court's decision to reject this motion.  As to Bender's federal claims, absent a motion

---

[5] But even were we sufficiently persuaded by the similarities between the "genuine issue" summary judgment standard and the "reasonable jury" directed verdict standard nonetheless to review the court's denial of Bender's directed verdict motion, we would affirm the trial court's decision.  The well-established Boeing standard instructs us to "consider all of the evidence . . . in the light and with all reasonable inferences most favorable to the party opposed to the motion." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969)(en banc)("If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting the motion[] is proper.").  Applying the substantive law of Louisiana, since Bender's directed verdict motion applied only to his pendent state law claims, we are unable to say that a reasonable and fair-minded jury could not have made credibility determinations and drawn inferences favoring the officers, and returned a verdict clearing them of misconduct. *See* Kyle v. New Orleans, 353 So.2d 969, 972-73 (La. 1977)(articulating the elements of excessive force under Louisiana law); Marshall v. Circle K Corp., 715 F. Supp. 1341, 1343 (M.D. La. 1989)(discussing Louisiana's requirements for claims of intentional infliction of emotional distress)(citations omitted), *aff'd mem.*, 896 F.2d 550 (5th Cir. 1990).

8

for directed verdict in the district court our inquiry is restricted to "whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a 'manifest miscarriage of justice.'" Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978)(emphasis in original). Measured against this arduous standard, the evidence submitted regarding Bender's federal claims falls far short of requiring that the verdict be set aside on insufficiency of the evidence.

B.    The Admission of Evidence About the Murder

Bender next complains that the district court erred in allowing the jury to hear highly inflammatory and prejudicial testimony concerning the murder of Deputy Kinney. Specifically, the judge allowed witnesses to discuss in graphic detail the circumstances surrounding Kinney's murder, for which Bender had been convicted about six months earlier. Although he concedes that Federal Rule of Evidence 609(a)(1) allows a witness to be impeached with evidence of prior convictions, Bender contends that the probative value of the evidence was slight and easily outweighed by the danger of unfair prejudice. Accordingly, he argues, it should have been excluded under Federal Rule of Evidence 403, which cautions against the admission of otherwise-relevant evidence likely to induce a purely emotional decision.

9

This argument also is without merit. Following its latest amendment in 1990, Federal Rule of Evidence 609(a)(1), previously a source of considerable judicial and academic dissatisfaction, now provides:

> **(a) General rule.** For the purpose of attacking the credibility of a witness,
>
> (1) evidence that the witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused[.]

This rule, as now amended, was applicable in this case. Nothing in the record indicates that the district court engaged in prejudice/probativity weighing under Rule 403. That omission is irrelevant in this case. Bender himself gave the first testimony about the underlying facts of his murder conviction. On direct examination, Bender discussed in great detail the facts surrounding the shooting of Deputy Kinney. He also discussed his grand jury testimony underlying the criminal proceedings. Bender's later objections to questions concerning the murder were properly overruled. The danger of unfair prejudice was introduced not by the defendants, but by Bender himself. The district judge noted as much when Bender's counsel broached the subject once more near the end of the trial:

> You took your clients through their whole murder scene on direct examination and you have made it very difficult now to draw any line. You are now going back into this.

10

You keep objecting when they talk about it but you bring it out when you want to. . . . [Bender] got up there and told the jury I did not murder the deputy and he went through the whole scene. Now, they're obviously entitled to impeach him by showing that's a lie.

Given that Bender opened the door to evidence regarding his underlying murder conviction, his "substantial rights" were not jeopardized. *See* Fed. R. Civ. P. 61 (defining harmless error as "any error or defect in the proceeding which does not affect the substantial rights of the parties").

C.    The "Significant Injury" Requirement

The trial judge erroneously instructed the jury that Bender could prevail on his federal excessive force claim only if he proved a significant injury. We find that the mistaken instruction warrants reversal.

We afford trial judges wide latitude in fashioning jury instructions and ignore technical imperfections, *see, e.g.*, Pierce v. Ramsey Winch Co., 753 F.2d 416, 425 (5th Cir. 1985). But the trial court must "instruct the jurors, fully and correctly, on the applicable law of the case, and . . . guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth." 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2556 (1971). Reversal is therefore appropriate whenever the charge "as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Kyzar v. Vale Do Ri Doce

11

<u>Navegacai, S.A.</u>, 464 F.2d 285, 290 (5th Cir. 1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); *see also, e.g.*, <u>McCullough v. Beech Aircraft Corp.</u>, 587 F.2d 754, 759 (5th Cir. 1979). Assessing whether the jury was properly guided, however, is only one-half of the inquiry. Even though error may have occured, "[w]e will not reverse 'if we find, based upon the record, that the challenged instruction could not have affected the outcome of the case.'" <u>Middleton v. Harris Press and Shear, Inc.</u>, 796 F.2d 747, 749 (5th Cir. 1986)(quoting <u>Bass v. United States Dept. of Agriculture</u>, 737 F.2d 1408, 1414 (5th Cir. 1984)).

We first address a threshold, procedural matter. Defendants argue strenuously that Bender failed to preserve this issue for appeal because he did not lodge oral on-the-record objections to the jury charge when invited to do so by the trial court. FED. R. CIV. P. 51. This is immaterial, however, since Bender had earlier filed written objections to the proffered jury instructions. We recognize that error is preserved for appeal so long as the complaining party states his assertion to the trial court prior to the time when the court invites on-the-record objections to the charge. *E.g.*, <u>Pierce</u>, 753 F.2d at 424; <u>Lang v. Texas & P. Ry.</u>, 624 F.2d 1275, 1279 (5th Cir. 1980)("the failure to object may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing"). The lack of another in-court objection echoing Bender's earlier written protest, although useful as are all on-

12

the-record occurrences, does not defeat his ability to challenge the instructions on appeal.

The officers voice an alternative argument, that even if we recognize Bender's earlier written objections as timely, they are nonetheless defective because they fail to satisfy Rule 51's demand for specificity. We conclude that Bender's written objections were sufficiently explicit. The instructions proffered by the trial court, as set out below, were gleaned almost verbatim from the factors set forth in Huguet v. Barnett, 900 F.2d 838, 841 (5th Cir. 1990). Huguet is an Eighth Amendment excessive force case importing the significant injury requirement from Johnson v. Morel, 876 F.2d 477, 480 (5th Cir. 1989)(en banc)(per curiam), a Fourth Amendment excessive force case holding that trivial harms do not rise to constitutional import.

Bender's written objections clearly challenge the use of Johnson's Fourth Amendment standard:

> Plaintiff object[s] to Jury Charge No. 3 for the reason that Johnson [v]. Morel . . . was not the clearly established law in the Fifth Circuit on February 20, 1989, hence the test enunciated in **Johnson** is not applicable to the facts in this case.
>                           *     *     *
> Plaintiff object[s] to Jury Charge No. 5 for the reason that Johnson [v]. Morel . . . is not the law of the case. Plaintiff's civil rights were violated after his arrest and [after he was] locked in a jail cell. None of the officers involved in the arrest of Plaintiff participated in the beating in the interrogation room. Plaintiff's Fourteenth Amendment due process rights to be free from punishment were violated by Staton, McComic, Byles and Remedies.

13

We now turn to the critical issue. Was it correct to instruct the jury that proof of significant injury was necessary to support Bender's federal claim? If not, was the error harmless? Two recent cases control our decision. The first is the Supreme Court's decision in Hudson v. McMillian, -- U.S. --, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). In Hudson, the Supreme Court abandoned its prior insistence on an objectively serious deprivation to hold that a prisoner need not demonstrate significant injury where the force used was malicious and wanton. It reversed a decision of this Court that had applied our established precedent emphasizing the requirement of significant injury in excessive force cases. The Supreme Court held that "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at --, 112 S.Ct. at 999 (citing Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986)).

Subsequently, in Valencia v. Wiggins, 981 F.2d at 1440, 1446 (5th Cir. 1993), *petition for cert. filed April 19, 1993*, we held that it was obviously proper to extend the analysis announced in Hudson and Whitley to pre-trial detainees under the due process clause of the Fourteenth Amendment. *See also* Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)(per curiam). In short, when determining what standard applies to excessive force claims brought by pre-trial detainees, the proper due process inquiry does not probe the extent of the injury sustained, although

14

that is one factor that can evince wantonness.  Rather, it probes the subjective intent of the detaining officers.[6]

The timing of this case adds an unusual facet; it was tried while Hudson was pending before the Supreme Court.  Anticipating that the Supreme Court might abrogate our Circuit's significant injury requirement, the trial court attempted to word the jury interrogatories in such a manner as to avoid the effect of a reversal.  Focusing on the federal claims, the court first asked, "Do you find that the following defendants used excessive force against Raymond Bender which was objectively unreasonable?"  Then, the court asked separately whether Bender "has proven a significant injury resulting directly from excessive force[.]"  The jury answered "no" to both inquiries.  The jury was plainly required to find significant injury before answering "yes" to the second question.  Whether the same can be said of the first question turns on how the jury was instructed.

_____

[6] Admittedly, such intent is often undiscernible, and the trier of fact must base its determination on relevant objective factors suggestive of intent.  Our recent decision on remand in Hudson summarized some of the pertinent factors:

1.  the extent of the injury suffered;
2.  the need for the application of force;
3.  the relationship between the need and the amount of force    used;
4.  the threat reasonably perceived by the responsible
     officials; and
5.  any efforts made to temper the severity of the forceful
    response.

Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992).

15

It is clear that the jury was specifically instructed to deny Bender's federal claim unless he proved that he sustained a significant injury. In instructing the jury about these claims, the trial judge quoted almost verbatim from Johnson, now arguably overruled,[7] and stated repeatedly that significant injury was a vital, necessary component of Bender's case:

> In order to prove that the defendants used excessive force, Mr. Bender must prove by a preponderance of the evidence:
>
> 1. a significant injury, which
>
> 2. resulted directly and only from the use of force that was clearly excessive to the need; the excessiveness of which was
>
> 3. objectively unreasonable.
>
> If Bender fails to prove any of these elements, you must find for the defendants. These three elements are objective focusing on the injury, the amount of force used, and the amount of force necessary.
>
> To determine whether a "significant injury" has been inflicted, you must consider only the injuries resulting directly from the constitutional wrong. There can be a

---

[7] Whether Johnson has in fact been overturned remains unresolved. At first look, the abrogation of significant injury appears settled no matter what standard under § 1983 is being applied. *See* Knight v. Caldwell, 970 F.2d 1430, 1432 (5th Cir. 1992)(stating in dictum that "we can no longer require persons to prove 'significant injury,' . . . under section 1983"). But other recent Fifth Circuit cases, while recognizing the tension between Johnson and Hudson, have expressly refused to decide whether Johnson's vitality has been impaired by Hudson in the *Fourth* Amendment context. *See* Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 and n. 7 (5th Cir. 1992), *cert. denied*, 1993 U.S. LEXIS 3765 (U.S. 1993); King v. Chide, 974 F.2d 653, 657 n. 2 (5th Cir. 1992). Thus, it remains an open question in this Circuit whether Johnson's significant injury requirement survives in situations involving arresting, as opposed to custodial, officers.

constitutional violation only if a significant injury resulted from the officer's use of excessive force.

Defendants counter on multiple fronts. First, they argue that even if we determine that the court issued erroneous instructions, "such instruction was harmless error as the jury specifically found that none of the defendants used excessive force which was objectively unreasonable." The defendants thus maintain that the precise language of the special verdict form "cured" any defect in the instructions and provides a basis to sustain the verdict even though Hudson abolished the significant injury requirement. This argument must fail. As illustrated above, before even reaching the question of whether the officers' actions were objectively unreasonable, the jury was *first* required to agree that Bender had suffered a significant injury: "There can be a constitutional violation only if a significant injury resulted from the officer's use of excessive force."

Second, the officers point out that when the trial judge advised the jury concerning Bender's excessive force claim arising under *state* law, he specifically stated that significant injury was not a necessary element under Louisiana law. Thus, since the jury rejected Bender's state claim as well, the officers insist it would be futile to try the entire case again, particularly the state law component. We partly agree. Bender does not contest the accuracy of the instructions regarding his excessive force claim arising under state law. Recognizing "the almost invariable assumption of

17

the law that jurors follow their instructions," <u>Richardson v. Marsh</u>, 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987), we hold that the jury's decision exonerating the officers under state law should be affirmed. Affirming the state component, however, is an unsound basis upon which to deny automatically Bender's federal claim, where the error occured. Although the relevant objective factors are similar under both schemes, *compare, e.g.*, <u>Kyle v. New Orleans</u>, 353 So.2d 969, 973 (La. 1977), *with* <u>Hudson</u>, 962 F.2d at 523, they are not so identical for us to conclude that a decision absolving the officers under Louisiana law mandates a parallel finding of "no excessive force" under § 1983. Simply put, the differences--though admittedly slight--extend beyond whether "significant injury" is used as a predicate to liability. Although Judge Jones's cordial dissent is persuasive, we cannot adopt her view that the erroneous instruction was harmless error.

The Supreme Court has advised that "if one cannot say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that [Bender's] substantial rights were not affected." <u>Kotteakos v. United States</u>, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Our review of the record evidence, particularly in light of the subtle--yet conceivably important--differences between the two excessive force standards, does not convince us that the

18

jury's decision was unaffected by the challenged instruction. <u>Bass</u>, 737 F.2d at 1414. Because we are left in "grave doubt" whether the trial court's erroneous instruction exerted "substantial influence" over the outcome of the case, the jury's decision on Bender's § 1983 claims cannot stand. <u>Id</u>.

The case must be retried to submit properly the question: "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson</u>, -- U.S at --, 112 S.Ct. at 999; *see* <u>Wiggins</u>, 981 F.2d at 1446-47, 1449.

### III.  CONCLUSION

The judgments entered on Bender's federal excessive force claims are REVERSED, and those causes of action are REMANDED to the district court for a new trial. Our decision today does not affect the denial of Bender's federal claim of deprivation of medical treatment or his various state claims. Upon careful examination of the record evidence, the judgments entered on those issues are AFFIRMED.

No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.

AFFIRMED IN PART.  REVERSED AND REMANDED IN PART.


JONES, Circuit Judge, concurring in part and dissenting in part:

Judge Williams's opinion is persuasive and I readily concur in all but one aspect of its reasoning, with which I must cordially disagree.  I dissent only from that portion of his opinion which remands Bender's case for a new trial on whether the police officers used excessive force under federal constitutional standards.  Although the district court heroically attempted to apply then-extant law on the constitutional standard for excessive force against pretrial detainees, I agree that in light of Hudson and Valencia, supra, his instructions were wrong.  Unlike my colleagues, I would hold this a harmless error.  The court carefully instructed the jury that Louisiana law does not require a finding of significant injury as a predicate to state tort law liability of the officers, and the jury found against Bender.  I do not agree that simply because the same instruction will now be given as to federal standards of recovery, a new jury could or should reach a different factual conclusion. The officers, I would contend, have been effectively exonerated by the jury's refusal to find that -- even without a significant injury requirement -- Bender was the victim of excessive force.  I therefore dissent from this portion of the panel opinion.

20