United States Court of Appeals,

Fifth Circuit.

No. 93-7219.

James E. PALMER, Plaintiff-Appellant,

v.

A. LARES, et al., Defendants-Appellees.

Jan. 27, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, WIENER and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Appellant Palmer, an inmate of the Texas Department of Criminal Justice, filed a § 1983 suit against prison guards alleging the use of excessive force against him. A jury trial was held and the jury returned a verdict in favor of the defendants. Appellant now appeals the judgment alleging that the lower court erred in instructing the jury, erred by dismissing his *Batson* motion, and erred by allowing testimony in violation of Rule 615. For the reasons discussed below we affirm.

## Procedural History

Appellant filed his original § 1983 claim *pro se* and *in forma pauperis* on November 18, 1985. After a pretrial hearing before Honorable Lynn Hughes, the claim was dismissed with prejudice under 28 U.S.C. § 1915(d). Appellant appealed to the Fifth Circuit, and on August 13, 1990, this Court issued a judgment reversing the district court and remanding the case for further proceedings.

*Palmer v. Lares,* 912 F.2d 1466 (5th Cir.1990). After remand, the district court ordered Appellant to respond. Receiving no response the district court dismissed the case for want of prosecution on December 14, 1990. Appellant again appealed, and this Court issued a judgment on May 28, 1991, vacating the district court's decision and remanding the case. *Palmer v. Lares,* 934 F.2d 1261 (5th Cir.1991).

On second remand Appellant's case was heard by Magistrate Judge John Froeschner. The parties consented to a jury trial before the magistrate judge. The jury returned a verdict for the defendants and judgment was entered on March 11, 1993. Appellant now brings his third appeal before this Court.

## Facts

Appellant contends that three guards came to his cell, handcuffed him, and began a destructive search of his cell. When he questioned the guards' actions they responded by beating him repeatedly. He was then taken to a nurse, examined, and returned to his cell. Upon his return, Appellant was again beaten by the guards. Appellant pleaded with the other inmates to call for assistance. Appellant was examined a second time; the nurse noted bleeding from the ear and a possible skull fracture. Appellant was subsequently flown to a hospital. At the hospital no fracture was detected and the bleeding from the ear was attributed to an ear infection. The only injuries noted by the hospital were a hematoma on the left side of Appellant's face and tenderness.

## Discussion

I. Jury Instructions

Appellant contends that the jury instructions were improper. The magistrate judge instructed the jury concerning Appellant's excessive force claim under the *Shillingford*[1] standard. The instruction provided:

> In order to prove that the defendants used excessive force in violation of the Eighth Amendment, the plaintiff must prove by a preponderance of the evidence that the force used by the defendants was grossly disproportionate to the need for the use of force under the circumstances, that the force was inspired by malice rather than careless or unwise excess of zeal, and that the force used proximately caused a severe injury to the plaintiff.

Appellant objected arguing that the *Hudson*[2] standard should be used; instead of "severe injury" the court should have used the term "harm."

Trial judges are normally accorded "wide latitude in fashioning jury instructions." *Bender v. Brumley,* 1 F.3d 271, 276 (5th Cir.1993). The trial court, however, must properly instruct the jury on the applicable law and guide the jury to an intelligent understanding of the issues in the case. *Id.* This Court will reverse the trial court only if the charge, taken as a whole, leaves this Court with "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.* Furthermore, this Court will not reverse if it finds that the

---

[1] *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981) (abrogated by *Valencia v. Wiggins,* 981 F.2d 1440 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993)).

[2] *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

challenged instruction could not have affected the outcome of the case. *Id.*

In *Shillingford v. Holmes* this Court, in 1981, required a showing that the state's action caused "severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Shillingford,* 634 F.2d at 265. Appellant contends that the standard applied by the lower court should have been reduced to the mere harm standard enunciated in the United States Supreme Court case of *Hudson,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (holding that in order to establish a violation of the cruel and unusual punishment clause based on a claim of excessive use of force, a prisoner who shows unnecessary and wanton infliction of pain is not required to show serious injury; a showing of harm is sufficient). The issue before us is not one of first impression.

This Court held in *Valencia* that reasonableness of the state's action must be measured against the law as it existed at the time of the conduct in question. *Valencia v. Wiggins,* 981 F.2d 1440, 1449 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993). "The force which Valencia alleges was applied to him excessively was used in 1987, at which time *Shillingford's* substantive due process standard was the clearly established law in this circuit for excessive force claims ..." *Id.* The conduct in question—the alleged excessive use of

4

force—occurred on September 23, 1985. *Shillingford* was decided in 1981 and was the established law as of September 23, 1985.[3] Therefore, the lower court did not err in instructing the jury as to the proper standard of harm.

In examining the jury instructions this Court has become aware of an error in the charge of which Appellant did not complain. Appellant argued that the lower court merely used the wrong standard of harm in instructing the jury. As discussed above the lower court did not err in this respect; however, the lower court improperly incorporated the inquiry of qualified immunity in its jury charge. Evaluating a defendant's right to a qualified immunity defense necessitates a two-step inquiry. *See King v. Chide,* 974 F.2d 653, 656-57 (5th Cir.1992). First, one must determine whether the plaintiff has alleged a violation of an established constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Second, if a constitutional right has been violated, one must determine if the defendant's conduct was objectively reasonable. *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993).

Under the first step, the officer's conduct is measured by "currently applicable constitutional standards." *Rankin v. Klevenhagen,* 5 F.3d 103, 105 (5th Cir.1993). Under the second step, if there is a constitutional violation, the officer is

---

[3]Appellant argues that *Hudson* was the law at the time of the occurrence because the *Hudson* case arose out of the year 1983. This argument is without merit. *Hudson* was not decided until 1992 and therefore was not established law until this time.

nevertheless entitled to qualified immunity if the officer's conduct was objectively reasonable as measured by reference to clearly established law. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Rankin,* 5 F.3d at 105. The magistrate judge failed to instruct the jury on the first prong of the inquiry. The magistrate judge should have first instructed the jury to determine whether Appellant had established a violation of his Eighth Amendment rights to be secure from excessive force. After this instruction, the court should have instructed the jury as to the law in effect at the time of the incident. The court omitted the first prong and instructed the jury to evaluate the reasonableness of the defendants' conduct under the law in effect at the time of the incident.

The issue becomes whether this error requires reversal. There appears to be no case law on this issue. Although we can not see how this could "have affected the outcome of the case,"[4] we leave determination of this issue for another day. Appellant failed to raise this issue at trial or on appeal, therefore, it is not properly before this Court. *See Carmon v. Lubrizol Corp.,* 17 F.3d 791 (5th Cir.1994) (holding that while this Court liberally construes briefs in determining issues presented for review, issues not raised at all are waived); *Picco v. Global Marine Drilling Co.,* 900 F.2d 846 (5th Cir.1990) (holding that an argument not presented to the district court nor raised in appellate briefs nor raised prior to oral argument was not properly preserved for

---

[4]*Bender,* 1 F.3d at 276.

6

appeal).

II. *Batson* Motion

Appellant contends that the lower court erred by allowing counsel for the defendants to use peremptory strikes in a discriminatory manner in contravention to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). During jury selection the magistrate judge asked Mrs. Paul, a member of the venire, whether she and her husband were employed. She responded that she was a housewife and her husband was retired. Mrs. Paul was the only juror belonging to the same minority class as Appellant—African-American. Defense counsel struck Mrs. Paul and Appellant objected with a *Batson* motion. The magistrate judge overruled the objection on the grounds that he felt that Mrs. Paul was hostile and did not want to be in the courtroom.

"We pay great deference to the trial judge's decision regarding a *Batson* motion." *United States v. Hinojosa,* 958 F.2d 624, 632 (5th Cir.1992). "The trial judge's decision rests upon a credibility determination, and, thus, we interfere with that decision only if it is clearly erroneous or an abuse of discretion." *Id.* A judge's decision to allow the exclusion of a juror because of a given reason, for example, insufficient education, is reviewed under the abuse of discretion standard. *Id.* Whether the juror actually falls within the given reason, whether the venireman's education is insufficient, is a factual determination reviewed under the clearly erroneous standard. *Id.*

Evaluation of a *Batson* motion is a three step process. First,

7

the complaining party must make a *prima facie* showing that opposing counsel has exercised peremptory strikes in a discriminatory manner. Second, after this showing is made, the striking party must articulate a race neutral explanation of the decision. Finally, the trial court must determine whether the complaining party has successfully proven purposeful discrimination. *Batson,* 476 U.S. at 96-98, 106 S.Ct. at 1722-23.

Appellant argues that defendants did not offer a plausible racially neutral explanation of their use of this peremptory strike.[5] Defendants explained that they removed Mrs. Paul because "she wouldn't understand a fist fight," she did not show respect to the court as evidenced by not standing while addressing the court, she was hostile in response to the court's questions, she appeared as if she did not want to participate in the trial, and she and her husband were unemployed. Appellant responded to this argument by asserting that at least one other venireperson did not stand to address the court, that Mrs. Paul was not hostile, and that it was unfair to characterize her as unemployed. The magistrate judge overruled Appellant's objection, finding that Mrs. Paul was hostile and that she did not want to be in the courtroom.

This Court has held that intuitive assumptions about a potential juror's interest and attitude can be acceptable as race neutral explanations for a peremptory challenge. *United States v. Roberts,* 913 F.2d 211, 214 (5th Cir.1990), *cert. denied,* 500 U.S.

---

[5]It is not contested that Appellant made a *prima facie* showing of discrimination.

955, 111 S.Ct. 2264, 114 L.Ed.2d 716 (1991). The reasons the magistrate judge gave for overruling the *Batson* objection are reviewed under the abuse of discretion standard. Because attitude and demeanor have repeatedly been found to be valid reasons, the magistrate judge did not abuse his discretion. Whether Mrs. Paul did not actually want to participate in the trial and was hostile is reviewed under the clearly erroneous standard.[6] Appellant has failed to show that this finding was clearly erroneous. Therefore, we find no error requiring reversal.

III. Rule 615

Appellant contends that the lower court erred by permitting the jury to consider the testimony of Dr. Brockman and Nurse McCelvy, who had conversed with each other after Nurse McCelvy had testified, but before Dr. Brockman's testimony was heard. Appellant argues that the conversation between the two witnesses was in violation of rule 615 and resulted in tailored testimony. Rule 615 provides that the court may order witnesses excluded so

---

[6]The magistrate judge articulated his reasons for denying the motion:

> ... I felt as though she—the feeling that I got from the answers she gave me was like I have got better things to do than sit in this courtroom. I have got better things to do than to listen to some judge ask me about my life. I felt the hostility that Mr. Shortes had pointed out. I would say that just so you will know the basis of my ruling. That's the only basis of my ruling ... But the hostility to the answers to the Court, I sensed it as well. That to me is her demeanor. And I think the Defendants can make a strike based on their feelings of a prospective juror. And for that reason and that reason alone, I'm going to sustain—I'm not going to find a *Batson* violation.

9

that they cannot hear testimony of other witnesses.[7] The purpose of the rule is to prevent witnesses from tailoring their testimony to that of another witness's testimony. *See United States v. Wylie,* 919 F.2d 969, 976 (5th Cir.1990). A district court's decision to admit testimony in violation of Rule 615 is reversed only if the violation resulted in sufficient prejudice and is an abuse of discretion. *Id.* In determining whether an abuse of discretion occurred, this Court focuses on whether the witness's conversation concerned substantive aspects of the trial and whether the court allowed opposing counsel an opportunity to explore fully the conversation. *Id.*

Following Nurse McCelvy's testimony, the magistrate judge cautioned her not to discuss her testimony with any other witnesses. Nurse McCelvy, at defense counsel's direction, telephoned Dr. Brockman before Dr. Brockman was called to the stand. This conversation was revealed in Dr. Brockman's cross-examination. After Dr. Brockman completed his testimony, the magistrate judge examined Dr. Brockman to determine whether his conversation with Nurse McCelvy affected his testimony and concluded that it did not.

Appellant contends that Dr. Brockman's testimony was altered and tailored by his conversation with Nurse McCelvy. Although Appellant refers to parts of Dr. Brockman's testimony that were allegedly affected, Appellant does not explain *how* they were

---

[7]We must assume that the lower court or the parties invoked The Rule.

affected.  The defendants argue that the only reason Nurse McCelvy called Dr. Brockman was to establish that certain notations were in fact made by another physician and not an assistant as Dr. Brockman thought.  Nurse McCelvy's testimony was not discussed.

Appellant contends that the tailored testimony is evident when one compares Dr. Brockman's testimony at trial to his testimony in an earlier deposition.  The excerpt to which Appellant refers involves an attempt to impeach Dr. Brockman based on his answers in a deposition.  However, Appellant does not point out what portion of or how Dr. Brockman's testimony was allegedly altered.  The minor discrepancies between the deposition and the cross-examination involve words such as "probably" versus "might" and single word answers versus the same answer with elaboration. For example, during his deposition Dr. Brockman was asked if an earache, vertigo, or dizziness would be aggravated under certain conditions.  Dr. Brockman responded that it probably would.  At trial Dr. Brockman was asked the same question and he responded that it might but that he was not one hundred percent sure.

We find no indication that the lower court abused its discretion by permitting the jury to consider the testimony of the witnesses.  Dr. Brockman's testimony did not appear to be affected by his conversation with Nurse McCelvy;  Appellant failed to indicate how Dr. Brockman's testimony was altered;  and the lower court gave Appellant ample opportunity to explore fully the conversation on cross-examination.  Accordingly, we affirm the lower court.

AFFIRMED.