UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-30259
Summary Calendar
_____

RUSSELL SAYRIE,

Plaintiff-Appellant,

versus

PENROD DRILLING CORP.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(93-CV-1982)
_____
August 31, 1995

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

Russell Sayrie appeals an adverse judgment on a jury verdict,
contending that the district court erred in ruling on his
objections under *Batson v. Kentucky*, 476 U.S. 79 (1986).  We
**AFFIRM**.

I.

Sayrie, a black male, sued Penrod, now known as Ensco Offshore
Company, under the Jones Act to recover damages for injuries he

_____

[1]    Local Rule 47.5.1 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that rule, the court has determined that this opinion
should not be published.

allegedly sustained while working aboard an Ensco vessel.  Ensco used its peremptory challenges to strike three venirepersons, one of whom was female.  After the court empaneled the jury, and the venire had been released, Sayrie objected under *Batson*, claiming that the venirepersons peremptorily struck by Ensco were black, and contending that Ensco had used its peremptory challenges to discriminate against the two male venirepersons because of their race, and against the female venireperson because of her race, gender, and economic status.[2]

The district court immediately conducted a comprehensive *Batson* hearing, and Ensco offered discrimination-neutral reasons for the strikes.  Among other things, Ensco's counsel provided his notes taken during voir dire to the court, and they are in the record.  The court found the explanations of Ensco's counsel to be credible, and overruled Sayrie's *Batson* objection.  The jury returned a verdict in favor of Ensco.

## II.

A party in a civil action may challenge another party's use of a peremptory strike that excludes a prospective juror on the basis of that juror's race or gender.  *Great Plains Equip., Inc. v. Koch Gathering Sys., Inc.*, 45 F.3d 962, 964 (5th Cir. 1995); *J.E.B. v.*

---

[2] Sayrie's objection was untimely, to say the least. *See United States v. Romero-Reyna*, 867 F.2d 834, 837 (5th Cir. 1989) (*Batson* objections must be made before dismissal of the venire), *cert. denied*, 494 U.S. 1084 (1990).  A contemporaneous objection is required because "[t]he nature of the claim requires that it be raised when the strikes are made".  *See Jones v. Butler*, 864 F.2d 348, 369 (5th Cir. 1988), *cert. denied*, 490 U.S. 1075 (1989).  Moreover, except for the assertions of Sayrie's counsel, the record does not reflect the race of the challenged venirepersons.

*Alabama ex rel. T.B.*, ___ U.S. ___, 114 S. Ct. 1419 (1994).

> [T]he complaining party must make a *prima facie* showing that opposing counsel has exercised a peremptory challenge on the basis of race [or gender]. Once this showing has been made, the burden shifts to the striking party to articulate a race [or gender]-neutral explanation for the strike. Thereafter, the court must determine whether the *Batson* claimant has proven purposeful discrimination.

*Great Plains*, 45 F.2d at 964-65.[3] "[T]he ultimate inquiry for the judge is not whether counsel's reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race [or gender]-based". *United States v. Bentley-Smith*, 2 F.3d 1368, 1375 (5th Cir. 1993).

"We pay great deference to the trial judge's decision regarding a *Batson* motion". *Palmer v. Lares*, 42 F.3d 975, 979 (5th Cir. 1995). Because the decision rests upon a credibility determination, we will interfere with it "only if it is clearly erroneous or an abuse of discretion". *Id*.

### A.

### 1.

Ensco stated that it challenged venireperson Spain because he never made eye contact with its counsel, but freely made eye contact with Sayrie and his counsel, and because Spain's nephew had

---

[3] Ensco contends that, because the record is silent as to the race of all but one of the venirepersons, Sayrie failed to establish a *prima facie* case. But, when the striking party has offered a race-neutral explanation for the peremptory challenges and the district court has ruled on the ultimate question of intentional discrimination, the preliminary issue whether the challenging party has made a *prima facie* showing becomes moot. *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

had back surgery, and might sympathize with Sayrie, who had undergone back surgery also. Sayrie contends that Spain's alleged failure to make eye contact was pretextual, because Ensco's counsel did not ask Spain any questions. He asserts that other venirepersons indicated that there was a back injury or an injury from a work-related accident within their family history, but Spain was the only venireperson struck for this reason.

Failure to make eye contact with counsel during voir dire is an acceptable race-neutral ground for a peremptory challenge. *See* **Polk v. Dixie Ins. Co.**, 972 F.2d 83, 86 (5th Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S. Ct. 982 (1993). The fact that other venirepersons with back problems were not struck is irrelevant, because there is no evidence that those venirepersons refused to make eye contact with defense counsel. The district court did not abuse its discretion.

### 2.

Ensco stated that it challenged venireperson Dauphine because he was the only member of the venire who had attended school with Sayrie. Counsel anticipated that some witnesses would not be truthful, and he did not want, on the jury, a "wild card" who knew Sayrie. Sayrie points out that the record indicates that he and Dauphine were casually acquainted, at most; that nothing suggested that the two socialized together or had seen one another since attending school together; and that Dauphine testified that their friendship would not affect his decision.

Sayrie relies on **Bennett v. Collins**, 852 F. Supp. 570 (E.D.

- 4 -

Tex. 1994), a habeas case in which the district court determined, despite Bennett's failure to object during jury selection, that the apparently legitimate, race-neutral reasons provided by the State, years after the original criminal trial, were a pretext for challenging venirepersons because they were black, in violation of **Batson**. **Bennett**, 852 F. Supp. at 584-85. The court was unpersuaded by the prosecutor's explanation that a challenged venireman was excluded because he knew the defendant's mother. **Id**. at 578-80. Sayrie contends that because his case arose in New Iberia, Louisiana, a small community, it is not surprising that one of the venirepersons was acquainted with him, and that the exclusion of someone on that basis would have an impermissible effect of excluding a disproportionate number of blacks.

Even assuming that **Bennett** was correctly decided, it is distinguishable. Unlike in **Bennett**, the district court held a nearly contemporaneous hearing to assess Ensco's intentions. The district court is in the best position to evaluate an attorney's justification for striking a prospective juror. See **United States v. Lance**, 853 F.2d 1177, 1181 (5th Cir. 1988). The court found counsel's explanations credible. That finding is not clearly erroneous.

3.

Finally, Ensco stated that it challenged venireperson Pierre, who was unemployed, single, and had no discernible source of income, because of her lack of background and her poor demeanor. Sayrie contends that Ensco excluded Pierre because of her race,

gender, and economic status. Sayrie maintains that Ensco's explanation was pretextual because it did not strike two white jurors who were unmarried, unemployed, and had no source of income.

Sayrie urges us to extend *Batson* to prohibit the use of peremptory challenges to exclude a venireperson on the basis of economic status, citing 28 U.S.C. § 1862's proscription against "economic status" as a basis for exclusion from jury service.[4] He contends further that strikes based on unemployment have a disparate impact on minorities.

Our court has accepted economic status as a non-racial motivation for a peremptory strike. *See United States v. Pofahl*, 990 F.2d 1456, 1466 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 266, 560 (1993). And, we recently considered a similar contention in *United States v. Jackson*, 50 F.3d 1335, 1341 & n.11 (5th Cir. 1995). We noted that, in extending *Batson* to prohibit gender-based strikes, the Supreme Court had expressly disavowed the implication that peremptory challenges were being eliminated. *Id*. (citing *J.E.B.*, ___ U.S. at ___, 114 S. Ct. at 1429). We stated also that it was "most arguable that extending *Batson* [to prohibit strikes on the basis of economic status] would go far toward achieving that precise result". *Id*. We did not reach the issue, however, because the strike was motivated not only by the venireman's economic status, but also because of the prosecutor's

---

[4]    28 U.S.C. § 1862 provides that "[n]o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States ... on account of race, color, religion, sex, national origin or economic status".

- 6 -

perception that the venireman had given him a hostile look.  *Id*. at 1341.  We agreed with the district court that such was the "sort of intuitive judgment that courts generally must rely on counsel to exercise in good faith".  *Id*.

Likewise, we need not reach the issue in this case, because the record reflects that Ensco struck Pierre not simply because of her economic status, but in large part because of her demeanor. Ensco explains that Pierre had no history of employment or schooling, unlike the unemployed white jurors, one of whom previously had owned and operated two businesses, and the other of whom was attending college.  The district court agreed with Ensco's counsel that Pierre "was negative".  The district court had the benefit of observing Ensco's counsel first-hand and, as noted, of reviewing counsel's notes taken during voir dire.  The court determined that counsel was "giving honest reasons".  The district court did not abuse its discretion in accepting counsel's explanation, and Sayrie has not established that the court's finding was clearly erroneous.

### B.

Sayrie contends that the district court erroneously interpreted *Batson* and its progeny to mean that the presence of a black on the jury was sufficient to cure an equal protection violation.  When a black juror is accepted by the party alleged to have violated *Batson*, the contention that its peremptory strikes were based solely on race is weakened.  *United States v. Mixon*, 977 F.2d 921, 923 (5th Cir. 1992).  Accordingly, the district court

properly considered the fact that one of the empaneled jurors was black in making its ultimate determination that Sayrie had not established purposeful discrimination.[5]

III.

For the foregoing reasons, the judgment is

**AFFIRMED.**

---

[5]    Sayrie contends, for the first time on appeal, that the district court tainted the jury and its verdict by requesting only one juror to identify her race.  We refuse to consider this contention because Sayrie did not present it to the district court. *See Highlands Ins. Co. v. National Union Fire Ins. Co.*, 27 F.3d 1027, 1031-32 (5th Cir. 1994) (applying, in civil case, plain error analysis of *United States v. Olano*, ___ U.S. ___, 113 S. Ct. 1770 (1993)), *cert. denied*, ___ U.S. ___, 115 S. Ct. 903 (1995).