UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-10903
Dist. Ct. No. 3:97-CV-1608-G

_____

GODWIN N. OMOKARO,

                                        Plaintiff-Appellant,

versus

SCOTT WHITEMYER, Individually and in
official capacity as Dallas Police
Officer; KYLE HENSLEY, Individually and
in official capacity as Dallas Police
Officer; CITY OF DALLAS, TEXAS,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

December 30, 1999

Before JONES, and WIENER, Circuit Judges, and LITTLE[*], District
Judge. [*]

EDITH H. JONES, Circuit Judge:

        Omokaro has appealed the district court's summary

judgment in favor of two Dallas police officers and the City, the

effect of which dismissed his claims for unconstitutionally

_____

        [*]     District Judge of the Western District of Louisiana, sitting by
designation.

        [*]     Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

excessive force during an arrest on July 22, 1996. We have carefully reviewed the record and affirm the judgment on a somewhat different factual analysis from the district court's.

Like the district court, this court has engaged in *de novo* review of the summary judgment record to determine whether there are genuine issues of material fact that could lead a jury to conclude that officers Hensley and Whitemyer used unconstitutionally excessive force when they subdued Omokaro for resisting the issuance of a citation for remaining at Bachman Lake Park after closing. Bender v. Brumley, 1 F.3d 271, 275 (5th Cir. 1993). Whether a particular use of force is "objectively unreasonable" involves case-specific attention to the facts and circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the officers' safety, and whether he actively resists or attempts to evade arrest. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989). Reasonableness is judged from the perspective of the officer on the scene, rather than with 20/20 hindsight vision. Id.

The pertinent evidence here consists of affidavits of Omokaro and both police officers. We review them in the light most favorable to Omokaro, the opponent of summary judgment. Harper v. Harris County, 21 F.3d 597, 600 (5th Cir. 1994).

On the night of July 22, 1996 at approximately 12:30 a.m., Godwin Omokaro, Plaintiff, and Ava Marie Bryant, his companion, were seated in a vehicle at Bachman Lake Park, Dallas.

2

The park had posted curfew hours between 12:00 a.m. and 5:00 a.m. Officers Whitemyer and Hensley approached the vehicle and identified themselves as Dallas police officers. They requested identification from Omokaro, who was driving. Omokaro complied with the request while seated in the vehicle.

The officers informed Omokaro and Bryant that they were violating the park curfew. Omokaro states that he "overheard the two officers discussing their intent to harass [him]." The officers returned to their car to check for other "wants and warrants" on Omokaro. Finding none, they began writing a citation for the park curfew violation. During that time, Omokaro got out of his vehicle and walked to a nearby pay phone to call 911 because he "was in fear for [his] safety and the safety of [his] passenger." Officer Hensley got out of the police car and asked Omokaro to return to his car. Omokaro did not comply with the order and continued to speak on the phone. Hensley touched or pulled on the phone or on Omokaro himself.

After this point, the parties' accounts of the events differ. Omokaro asserts he did nothing to provoke the officers and that one of them approached him and sprayed him in the face with mace. Both officers, however, state that Omokaro kicked Hensley, who then informed Omokaro that he was under arrest. Whitemyer reports that he stepped out of the police car and ordered Omokaro to stop resisting. When the order was not followed, Whitemyer maced Omokaro.

3

Omokaro further asserts that, without provocation, the officers knocked his legs out from under him, struck him with a baton, placed him in a neck hold, and struck him with their fists. Inconsistently, Omokaro also states that he fell to the ground after being maced and that he placed his hands in front of his face because of pain from the mace. Omokaro admits to yelling and screaming a lot and asserts he was dragged across the ground. He lost consciousness, he says, after being handcuffed.

The officers, by contrast, report that Omokaro, a big, strong man, resisted arrest by kicking, hitting and biting and that they unsuccessfully attempted two physical compliance techniques to gain control of him. Only after using a third method, a Lateral Vascular Neck Restraint, were the officers able to handcuff Omokaro. Defendants indicate that Omokaro continued to kick, bite, and otherwise resist, so they called for backup. With assistance of several other police officers, they finally affixed leg restraints on Omokaro. The police officers placed him face down on the back seat of the police car and shortly thereafter noticed he was not breathing. CPR was administered, and Omokaro was transported to the hospital.[1]

The problem for Omokaro is that even if we accept his version of the facts, he has not contradicted salient features of the officers' testimony that support the contention that they

---

[1] At some point, Omokaro suffered an anoxic incident, loss of blood supply to the brain, and was left legally blind with other injuries.

4

responded reasonably to the developing situation. Omokaro was stopped by police for a curfew violation, and after being informed of the violation, he exited his car and went to a pay phone. He does not contradict that he refused to follow the officer's orders to stop using the phone and return to his car. Omokaro admits that he was upset by the initial interaction with the police and was calling for help. Thus, even if he did nothing more to provoke or threaten the officers at that point (i.e. even if he did not kick Hensley), he admittedly refused to obey verbal commands to stop using the phone and to return to his vehicle, and he probably did appear upset and angry. Officer Whitemyer then sprayed Plaintiff with mace to subdue him. Again, taking the facts in a light most favorable to plaintiff, the mace caused him to fall to the ground and thrash about in pain. From the perspective of a reasonable police officer on the scene, however, such thrashing could be viewed at least as resistance and perhaps as threatening behavior. All agree that Omokaro was handcuffed after the officers applied physical restraints.

After that point, Plaintiff claims no further recollection of the events. The officers' affidavits that he continued violently to resist arrest stand undisputed. Omokaro's contrary contention that he failed to provoke, threaten or resist the officers after handcuffing is inadmissible speculation on his part and creates no material fact issue requiring resolution by a jury.

5

No reasonable jury could find that the officers' actions in stopping Omokaro, ordering him to stop using the phone, and spraying mace to enforce their orders exceeded constitutional bounds. And even by Omokaro's account, a reasonable officer could have perceived his reaction to the mace -- rolling around, screaming and yelling -- as threatening or resisting arrest in such a way as to demand physical force to handcuff him. When Omokaro continued to thrash around after being handcuffed, the officers' call for backup assistance vividly reflects their assessment of a still-dangerous situation; the reasonableness of their actions from this point on is uncontradicted by the evidence.

The affidavit of proffered expert Lou Reiter also fails to turn these events into disputed jury issues. Experts on police techniques can always second-guess the officer in the field, opining that his judgment could have been better and his tactics could have been more lenient. But allowing such evidence to create jury issues in any but the most egregious cases would disregard the Supreme Court's point in Graham:

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain and rapidly evolving--about the amount of force that is necessary in a particular situation.

Graham, at 396-97. Reiter's affidavit does not explain how the officers' use of force was "clearly" disproportionate to the need.

Finally, Omokaro has not produced evidence to demonstrate that officers Whitemyer and Hensley had the duty, much less the

6

ability to monitor him medically after he was handcuffed. They both saw him conscious and breathing when he was placed in the police car. A short time later, Omokaro appeared to have stopped breathing. Other officers were milling about by this time. Omokaro's predicament was quickly assessed and treated at the scene. Because Omokaro can't identify what condition he should have been monitored for, how can he impose liability on police officers for not knowing?

The district court correctly concluded that the police officers' actions were constitutionally reasonable, rendering summary judgment on Omokaro's § 1983 claim the only proper course. In the absence of a case against the officers, Omokaro has no case against the City of Dallas either. The judgment of the district court is affirmed.

**AFFIRMED.**