**REVISED**

United States Court of Appeals,
Fifth Circuit.

No. 96-30062.

BELLSOUTH TELECOMMUNICATIONS, INC., Plaintiff-Appellee,

v.

JOHNSON BROTHERS CORPORATION OF LOUISIANA, et al., Defendants-Appellants.

Feb. 26, 1997.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before DAVIS and DUHÉ, Circuit Judges, and DOWD,[1] District Judge.

PER CURIAM:

Plaintiff-Appellee filed suit against Defendants-Appellants to recover for damage to two buried telephone cables which occurred during excavations conducted pursuant to a contract with the State of Louisiana Department of Transportation and Development. The district court granted summary judgment on the question of liability and subsequently did not permit submission of the question of comparative fault to the jury. Following a jury trial on the question of damages, a monetary judgment was entered in favor of plaintiff. Defendants appealed.

*I. BACKGROUND*

On August 11, 1994, BellSouth Telecommunications, Inc. ("BellSouth") filed suit against Johnson Brothers Corporation of

---

[1]District Judge of the Northern District of Ohio, sitting by designation.

Louisiana, Ohbayashi Corporation, Johnson Brothers Corporation and Ohbayashi Corporation (A Joint Venture) (hereafter collectively, "Johnson Brothers") for damage to BellSouth's underground conduit and cables. The damage occurred on August 13, 1993, during an excavation which Johnson Brothers was performing pursuant to a contract with the State of Louisiana Department of Transportation and Development ("DOTD") for work on the Greater New Orleans Bridge Project No. 2.

In its Answer filed on October 4, 1994, Johnson Brothers admitted that it had not complied with Louisiana's Underground Utilities and Facilities Damage Prevention Law ("Damage Prevention Law" or "the Act"), La.Rev.Stat.Ann. §§ 40:1749.11, *et seq.,* but disputed that this violation provided the basis for recovery by BellSouth. Johnson Brothers also averred comparative fault on the part of BellSouth for its failure to provide accurate and reliable information with respect to the location of its cables.

Following initial discovery, BellSouth filed a motion for summary judgment contending that Johnson Brothers' failure to comply with the Damage Prevention Law made it liable to BellSouth for the damages incurred. In opposition, Johnson Brothers argued that BellSouth was precluded from recovery by its own negligence in submitting to the DOTD erroneous plats upon which Johnson Brothers relied in performing the excavation.[2]

---

[2]Utility Plat No. F2, in effect since June 24, 1991, is the particular plat upon which Johnson Brothers relied to locate the cable and conduit. This plat depicts the cable and conduit run between manholes J-11 and J-111/2 along Carondelet Street as being located within the actual street and not on the curb side of the

2

On May 25, 1995, the district court granted summary judgment in favor of BellSouth on the question of liability. BellSouth then filed a motion for reconsideration or, in the alternative, motion *in limine* seeking clarification of the court's ruling. Specifically, BellSouth sought clarification as to whether Johnson Brothers' defense of comparative negligence remained viable. On June 27, 1995, treating BellSouth's motion as one *in limine,* the district court granted the motion and clarified that BellSouth's previous provision of erroneous plats to the DOTD under La.Rev.Stat.Ann. § 38:2223 could not form the basis for comparative fault.

Johnson Brothers then filed a motion for reconsideration and/or for leave to present evidence of BellSouth's comparative fault.[3] BellSouth filed a motion for summary judgment on the quantum of damages to which it was entitled. On October 11, 1995, the district court denied BellSouth's motion, concluding that there were genuine issues of material fact which precluded summary

_____

street. That depiction turned out to be erroneous, a fact admitted by BellSouth. (Response to Defendants' Request for Admissions, Nov. 1 and 2).

[3]Johnson Brothers had presented its argument on this point in its original opposition to BellSouth's motion for summary judgment. Although the argument was not crystal clear, it appeared to be as follows: BellSouth violated § 38:2223 by providing inaccurate plats to the DOTD when the two entered into a contract at the outset of the bridge project. Therefore, since the Damage Prevention Law itself provides, at § 40:1749.21(A), that the Act "shall not affect any civil remedies for personal injury or property damage, including damage to underground facilities or utilities[,]" Johnson Brothers should not be precluded by its own violation of the Act from relying upon § 38:2223 as the basis for a defense of comparative negligence under § 40:1749.21(A).

3

judgment on damages. It also denied Johnson Brothers' motion, making clear that it had already found that § 38:2223 could not serve as a basis for comparative fault under the Damage Prevention Law.

Following trial to a jury on the question of damages, a judgment in the amount of $54,092.18 was entered in favor of BellSouth.

Johnson Brothers appealed from the various rulings of the district court and from the final judgment, raising essentially two issues on appeal: (1) whether the district court erred by refusing to allow Johnson Brothers to submit evidence to the jury on the issue of BellSouth's comparative fault; and (2) whether the district court improperly instructed the jury on the issue of damages.

## II. DISCUSSION

### A. The District Court's Ruling on Summary Judgment, as Clarified by Subsequent Rulings

We review grants of summary judgment de novo, guided by the standards of Federal Rule of Civil Procedure 56, which provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

In this case, the material facts are undisputed: (1) Johnson Brothers damaged BellSouth's cables; (2) BellSouth's Utility Plat No. F2 purporting to show the location of the cables was erroneous;

4

(3) Johnson Brothers relied on Utility Plat No. F2 as it proceeded with the excavation on August 13, 1993;  and (4) Johnson Brothers did not comply with Louisiana's Damage Prevention Law.

The question which the district court had to resolve was a question of law, specifically:  whether Johnson Brothers' violation of the Damage Prevention Law precluded introduction of evidence of comparative fault on the part of BellSouth.

"It is well-established that this court reviews de novo questions of law raised in summary judgment appeals. *See Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1303 (5th Cir.1995).  More specifically, we review a district court's interpretation of a state statute de novo.  *See Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 987 (5th Cir.1992)." *Occidental Chemical v. Elliott Turbomachinery Co.,* 84 F.3d 172, 175 (5th Cir.1996).

Thus, on review, this court must determine whether the district court correctly construed the Damage Prevention Law to preclude Johnson Brothers' comparative negligence claim. Louisiana's Damage Prevention Law provides, in pertinent part:

> A.  ... [N]o person shall excavate or demolish ... near the location of an underground facility or utility, ... without having first ascertained *in the manner prescribed in Subsection B* of this Section, the approximate location of all underground facilities or utilities in the area which would be affected by the proposed excavation or demolition.

> B. (1) Except as provided in R.S. 40:1749.15 [emergency excavation], *prior to any excavation* or demolition, *each excavator ... shall serve telephonic notice of the intent to excavate* or demolish *to the regional notification center* serving the area in which the proposed excavation or demolition is to take place.  Such notice shall be given to the notification center *at least forty-eight hours,* but not

5

more than one hundred twenty hours, excluding weekends and holidays, *in advance of the excavation* or demolition activity....

La.Rev.Stat.Ann. § 40:1749.13 (West Supp.1997) (emphases added). Following the statutory notice, the regional notification center notifies "all member operators having underground facilities in or near the site of the proposed excavation." § 40:1749.14(B). The operator then must provide the excavator with the approximate location and type of underground facilities and may visit the site and mark the location and type of utilities involved. § 40:1749.14(C). Violators of these provisions may be fined as much as $250 for a first violation and as much as $1,000 for subsequent violations. § 40:1749.20.

Johnson Brothers does not dispute that it failed to notify BellSouth in violation of the Damage Prevention Law. It contends, however, that the lower court erred in finding that BellSouth's alleged violation of § 38:2223 could not support a comparative fault defense. Section 38:2223, which governs the commencement of work under public contracts, provided at the time of the accident:

A. Whenever any public entity enters into a contract for the construction, alteration or repair of any public works, the public entity through its official representatives shall, before the issuance of any work order and before the commencement of any work, give notice of such contract, in writing, to all utility, communication and public service companies and all public agencies and boards who furnish any utility, gas, water, electrical, communication, sewerage or drainage services which may have underground pipes, cables or any other underground installation which may be within the right-of-way where the public work is to be constructed, altered or repaired....

*Said written notice shall require that the person, partnership, corporation, board or agency so notified shall furnish to the public entity ... a diagram or plat showing the*

6

*location of such underground installations within the right-of-way, a copy of which shall be furnished by the public entity to the contractor before commencement of the work under the contract.* If such diagram or plat is not furnished within the time specified or any extension thereof granted by the public entity, the work order may be issued and the work commenced.

*Should the diagram or plat not be furnished or the location of the underground cables, pipes or other underground installations be inaccurately shown thereon, the public entity and the contractor shall be released from any responsibility in connection with their damage unless such damage is caused by the negligence of the public entity or contractor.*

La.Rev.Stat.Ann. § 38:2223 (West 1989) (emphases added).[4]

Apparently, BellSouth provided plats to the DOTD, as required by this statute, in the early 1980s when Louisiana began the Greater New Orleans Bridge Project No. 2.[5] Johnson Brothers argues that because the plats provided to the DOTD and on which Johnson Brothers relied were inaccurate, it should have been allowed to submit to the jury the question of whether BellSouth's fault contributed to its own damage.

---

[4]In 1995, the statute was amended to include the following language:

> This Section shall not relieve any public entity or contractor from the responsibility to give notice of intent to excavate or demolish to the regional notification center or centers serving the area in which the proposed work is to take place in order to be in compliance with the provisions of the "Louisiana Underground Utilities and Facilities Damage Prevention Law" as provided for in R.S. 40:1749.11 through 1749.22.

La.Rev.Stat.Ann. § 38:2223(B) (West Supp.1997).

[5]BellSouth's representatives had no independent recollection or record of having provided the plats, but admitted that BellSouth would have done so in the ordinary course of business as it relates to the bridge project.

7

The district court concluded that the mandatory comprehensive language of the Damage Prevention Law precluded Johnson Brothers from asserting BellSouth's comparative negligence. We find the district court's reasoning to be unpersuasive for two reasons. First, its treatment of violations of the Law is irreconcilable with judicial treatment of other analogous statutory violations. Second, the lower court's interpretation is inconsistent with the Law's penalty and remedy provisions and, as a consequence, improperly transforms this penal safety statute into a predicate for strict civil liability.

BellSouth accurately characterizes the language of the Law as mandatory. However, most safety statutes are compulsory in nature, and under Louisiana case law, the violation of such a statute does not, in and of itself, impose civil liability. *Weber v. Phoenix Assurance Co. of New York,* 273 So.2d 30, 33 (La.1973) (rejecting concept that violation of penal statute constitutes "negligence per se"); *see, e.g., Nolan v. Jefferson Downs,* 592 So.2d 831 (La.App. 5th Cir.1991), *writ denied,* 596 So.2d 559 (La.1992); *Wuest v. Fosco Enterprises, Inc.,* 544 So.2d 1328 (La.App. 4th Cir.1989). "Civil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another." *Faucheaux v. Terrebonne Consol. Gov't,* 615 So.2d 289, 292-93 (La.1993). Nothing in the language of the Damage Prevention Law indicates that it was meant to disturb these principles of Louisiana tort law.[6]

---

[6]The sole Louisiana appellate court to analyze the Damage Prevention Law did not impose absolute liability on the part of the excavator-defendant even though the excavator had violated the

Nor does the mandatory language of the statute foreclose the assertion of comparative fault in a negligence claim. *Id.* at 294-95 (applying comparative fault analysis where defendant violated regulation but plaintiff's negligence contributed to harm). Louisiana's comparative fault statute provides that "[w]hen contributory negligence is applicable to a claim for damages," the amount of damages recoverable is reduced in proportion to the degree of negligence attributable to the plaintiff. La.Civ.Code art. 2323. In turn, contributory negligence "is applicable" when there is evidence of plaintiff's fault. *Nealy v. LeBlanc,* 654 So.2d 468, 471 (La.App. 1st Cir.1995). Defendants asserted that BellSouth violated § 38:2223 in providing inaccurate plats and that the violation of BellSouth's statutory duty caused the damage to its underground cables and related equipment. While the factfinder may conclude that BellSouth's statutory violation was not a legal cause or cause in fact of the accident, the district court, on this summary judgment record, was not entitled to bar consideration of BellSouth's comparative fault.

This conclusion is further supported by Damage Prevention Law provisions that suggest that the legislation is intended to act as a penal safety provision and nothing more. Under § 40:1749.20, violators of the Law may be fined as much as $250 for a first

notification provision. *South Central Bell Telephone Co. v. Sewerage and Water Ltd. of New Orleans,* 652 So.2d 1090 (La.App. 4th Cir.), *writ denied,* 634 So.2d 1090 (La.1995). Instead, the court analyzed the claim under general negligence principles and looked to statutes and case law only to establish the excavator's duty to inform himself of the location of underground cables. No comparative negligence defense was asserted.

violation and as much as $1,000 for subsequent violations; this penalty can be imposed whether or not damages have occurred. Furthermore, the Damage Prevention Law itself, at § 40:1749.21(A), expressly negates any intent to provide a comprehensive civil liability scheme to the exclusion of Louisiana tort principles. That section provides:

> This Part shall not affect any civil remedies for personal injury or property damage, including damage to underground facilities or utilities.

§ 40:1749.21(A).

The above provision is not a unique Louisiana statute. We find an almost identical provision in the Louisiana Criminal Code, which provides:

> Nothing in this Code shall affect any civil remedy provided by the law pertaining to civil matters, or any legal power to inflict penalties for contempt.

La.Rev.Stat.Ann. § 14:6 (West 1986). The Louisiana Supreme Court has applied this same principle to penal safety statutes located outside the Criminal Code itself and held that those provisions may provide evidence of a duty, but nothing more. *See Laird v. Travelers Ins. Co.,* 263 La. 199, 267 So.2d 714, 717 (1972) (" "Criminal statutes are not, in and of themselves definitive of civil liability' and do not set the rule for civil liability, but they may be guidelines for the court in fixing civil liability." (quoting *Pierre v. Allstate Ins. Co.,* 257 La. 471, 242 So.2d 821, 829 (1970)); *see also Boyer v. Johnson,* 360 So.2d 1164 (La.1978).

After considering the language of the entire Damage Prevention Law, we see no reason to treat this act differently from other

penal safety statutes. The Louisiana courts have consistently held that those statutes may be used to demonstrate a duty but are not designed to impose strict civil liability.

In sum, we conclude that the district court erred in precluding Johnson Brothers from arguing that BellSouth's comparative negligence in submitting erroneous plats to the DOTD contributed to this accident.

*B. The Jury Instructions*

Johnson Brothers also asserts as error the district court's instructions to the jury on the question of compensatory damages. Specifically, Johnson Brothers argues that the district court erred in not fully explaining the legal principle set forth in *Louisiana Power & Light Company v. Smith,* 343 So.2d 367 (La.App. 4th Cir.1977).

We have established a two-part test for challenges to jury instructions:

> First, the challenger must demonstrate that the charge as a whole creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." [citation omitted]. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case. [citation omitted]. If a party wishes to complain on appeal of the district court's refusal to give a proffered instruction, that party must show as a threshold matter that the proposed instruction correctly stated the law. *Treadway v. Societe Anonyme Louis-Dreyfus,* 894 F.2d 161, 167 (5th Cir.1990).

*F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994) (quoting *Bender v. Brumley,* 1 F.3d 271, 276-277 (5th Cir.1993)).

In *Louisiana Power & Light Co. v. Smith* ("LP & L"), the case relied upon by Johnson Brothers as support for its argument that

11

the trial court's instructions on damages were erroneous, the Fourth Circuit Court of Appeal of Louisiana discussed the elements which can properly be included in an award of compensatory damages "when a utility company undertakes its own ... repairs and/or replacement[.]" *Id.,* 343 So.2d at 368. In *LP & L,* the utility company sued the owner and insurer of an automobile which had collided with a 40-foot wooden utility pole. The amount of damages awarded was the sole issue on appeal. The court concluded, not surprisingly, that only those damages are recoverable which are proven to have been proximately caused by the defendant's actions. In other words, to the extent an element such as overhead cost is actually proven to have been caused by a defendant's wrongful actions, that element can be included in the damages calculation. This is similarly true with respect to the determination and application of depreciation as an offset. The court rejected inclusion in the damages calculation of any portion of general operating expenses, such as fixed salaries of office personnel, which are "remote matters from the accident" and which "would have been paid [even] if the defendant had not ... damaged the connected facilities." *Id.* at 369.

Johnson Brothers had sought to have three specific instructions included in the jury charge.[7]

---

[7]Proposed Jury Charge No. 9:

*Damages—Calculation*

The fact that plaintiff herein is a public utility and subject to a governmental regulatory agency does not

12

With respect to these suggested instructions, the trial judge

stated:

I really don't have any quarrel with the principles in
these various instructions—I think they're more appropriate

―――――――――――――――

affect the rule of damages to be applied in this case.
A tortfeasor should not be penalized because of the
public character of the corporation which seeks to recover. The
accounting procedure cannot change established principles of tort
liability. The tortfeasor is liable for the value of the asset at
the time of the damage, and any change in this liability resulting
from bookkeeping methods is unwarranted.

Proposed Jury Charge No. 11:

*Damages—Unrelated Factors*


Under BellSouth's internally-generated operating
procedures, certain costs of doing business have been
allocated in the method it used in this case to calculate
its damages. However, if you find that certain of those
allocated expenses would have been incurred independent
of the damage to its cable caused by Johnson [Brothers]
then those expenses cannot be awarded. If, for example,
you find that the "overhead factors" made up of costs of
doing business such as headquarters-type expenses, land
and building expenses, vehicle use, headquarters-type
staff personnel expenses, position and benefits, costs of
supervision and costs of office support or anything else;
[sic] would have been incurred by BellSouth regardless of
the cable damages, you should appropriately reduce or
reject its rate for calculating damages by eliminating
such unrelated factors.

Proposed Jury Charge No. 12:

*Damages—Estimated Amounts*


If you find that plaintiff's evidence regarding
overhead costs, equipment costs or other aspects of its
damage claim are too vague and general then they should
not be awarded. Under Louisiana law where some
percentage factor is given for an overhead expense which
approximates or roughly estimates the actual costs, that
is insufficient to recover such an item of damages.

(Defendant's Requested Jury Charges, Docket No. 42 and 52).

13

for argument—and I think the instructions we have put together are enough guidance for the jury to make its decision.  There are other things you have in here that you can argue.

(Trial Transcript, p. 92).

The actual charge given to the jury was as follows:

*Compensatory Damages*

You must determine an amount that is fair compensation for all of the plaintiff's damages.  These damages are called "compensatory damages."

The purpose of compensatory damages is to make the plaintiff whole;  that is, to compensate the plaintiff for the damage that the plaintiff has suffered.  That is, the purpose of compensatory damages is to place the injured person as nearly as possible in the condition he would have occupied if the wrong had not occurred.

When property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage.  The measure of damage is the cost of restoring the property to its former condition.

No mechanical rule can be applied in the assessment of property damage.  Each case must rest on its own facts and circumstance as supported by the proof in the record.

The plaintiff here is seeking damages to its property that include salary, overhead, and other expenses.  It is the plaintiff's burden to prove damages by a preponderance of the evidence.

Under Louisiana law, "overhead" expenses, including salaries, directly incurred as a result of a tort are recoverable items of damages.

I instruct you that "overhead" can be allowed as a proper item of recovery if the overhead factor has been proven.  A party seeking "overhead" as a material item of damages must go forward carrying the burden of this proof in the same manner and with the same dignity as required for the proof of any other item of damages.  The item of "overhead" is nothing more and nothing less than an element in the overall order of proof of special damages.  It can be proven and disproven, challenged and supported in the same way as any other item of damages and must ultimately pass the same tests applied in proof of damages.

14

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendants. You should not award compensatory damages for speculative injuries, but only for the damage which the plaintiff has actually suffered.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider any damages to the plaintiff's property, to the extent you find it proved by a preponderance of the evidence. You may award as damages an amount equal to the cost of restoring the property to its condition prior to being damaged.

(Trial Transcript, pp. 120-122).

Johnson Brothers' challenge to the district court's instruction on compensatory damages does not meet the first test of *F.D.I.C. v. Mijalis, supra,* namely "that the charge as a whole creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.' " 15 F.3d at 1318. We find no error.

### *III. CONCLUSION*

For the reasons stated above, we vacate the district court's judgment and remand this case for further proceedings consistent with this opinion.

VACATED AND REMANDED.

15