# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 13, 2010

Lyle W. Cayce
Clerk

No. 09-41091

MARION R. MOSLEY,

Plaintiff - Appellant

v.

LEAMON E. WHITE,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:09-cv-00009-LED-JKG

Before KING, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Marion R. Mosley (Mosley), an inmate at the Coffield Unit of the Texas Department of Criminal Justice (TDCJ), alleged that Sergeant Leamon E. White (White), an official at the TDCJ, ordered him to face the wall and put his hands behind his back, and he immediately complied. Mosley claims that, after he complied, White repeatedly poked him in the face and left eye. White's conduct caused Mosley momentary blindness and cuts and abrasions in and around his left eye. His left eye eventually became infected, swollen, and discolored.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41091

Mosley proceeded *in forma pauperis* and filed a *pro se* suit under 42 U.S.C. § 1983. White subsequently filed a motion for summary judgment arguing, among other things, that he was entitled to qualified immunity in his individual capacity and dismissal under 42 U.S.C. § 1997e(e). The district court granted summary judgment in White's favor. Mosley appealed. We AFFIRM.

## I.

On October 14, 2008, as Mosley was walking down a hallway, Donathan Bernard Chandler (Chandler), another inmate, asked him a question. Because inmates are not permitted to talk in the hallway, an officer yelled at him and said "get your ass on down the hallway." Mosley was not sure that the officer, White, was speaking to him. So, he turned and looked in White's direction. At that point, White stated "Yeah, bastard. I'm talking to you." When Mosley asked White to stop using vulgar language, White ordered Mosley to face the wall and put his hands behind his back, and then threatened Mosley with a chemical agent. Mosley complied with the order and kept his hands behind his back, but White proceeded to call Mosley a "bitch" and repeatedly poked him in the face and left eye. As White poked Mosley in the face and eye, White's nail scraped across Mosley's eye and caused him momentary blindness and abrasions and cuts in and around his left eye.

Thirty minutes later, Mosley went to the medical department and complained of being poked in the left eye with a finger. The officer working the desk asked Mosley to complete a walk-in sick call request. A nurse examined the abrasions on his face and was in the process of treating his injuries when she asked Mosley how he had been injured. After he told her that White injured him, she refused to treat him until the medical department received an accident or use of force report. Within forty-eight hours, Mosley's abrasions became infected and remained so for six days. Discouraged by the nurse's refusal to treat him, Mosley elected not to seek further medical care. He was later given

No. 09-41091

a tube of antibiotic cream to apply to his eye by Louis Ray Green (Green), another inmate, who noticed that the left side of Mosley's face and his left eye were swollen and discolored.

On the day of the incident, Mosley submitted and filed his first "Offender Grievance Form," complaining about White's actions, but it was later returned because the TDCJ Office of the Inspector General (OIG) determined that there was insufficient evidence to support his claim because "Sgt. White denies verbally abusing you and states that at no time did he poke you in the face or eyes with his finger." Mosley's listed witness, Chandler, was never interviewed during the investigation. Also on October 14, 2008, Officer Melinda Thompson (Thompson), who witnessed the incident, filed an offense report claiming that after she ordered the offender to get up against the wall, he refused to do so. Thompson stated that because Mosley did not listen, she and White handcuffed Mosley and escorted him from the hallway.

On October 16, 2008, White prepared an investigative report. In the report, White states that he never touched Mosley and confirmed Thompson's offense report statements. Subsequently, a disciplinary case was filed against Mosley for using vulgar language. Mosley was found guilty on October 30, 2008 and lost 30 days of commissary privileges and received a 30-day cell restriction. On November 17, 2008, Mosley filed another grievance form, appealing the decision of his first grievance, complaining about the lack of investigation into his original grievance complaint, and threatening to file suit in federal court if his claim was not better investigated. It was also returned due to insufficient evidence to support the claim.

On January 5, 2009, Mosley filed suit against White under § 1983, alleging that White used excessive force against him in violation of the Eighth Amendment and seeking nominal, compensatory, and punitive damages. After Mosley filed suit, his case was referred to a magistrate judge. The magistrate

judge conducted a *Spears*[1] hearing and recommended that all of Mosley's claims be dismissed, except his "excessive use of force" claim. The district court adopted her report and recommendation. White, subsequently, answered Mosley's complaint and filed a motion for summary judgment, arguing that he was entitled to qualified immunity in his individual capacity because Mosley could not show that an excessive force incident ever occurred and that Mosley's alleged injuries failed to satisfy 42 U.S.C. § 1997e(e)'s physical injury requirement.

In support of his motion for summary judgment, White submitted Mosley's mental health records from October 2008; Mosley's grievance forms; Thompson's offense report; an affidavit from an OIG representative stating that the OIG did not have any case information regarding the October 14th incident; an affidavit from a clerk from TDCJ's Emergency Action Center (EAC), stating that Mosley received no treatment from EAC; an affidavit from a TDCJ representative stating that Mosley did not file a use of force report; an affidavit from Thompson reiterating the statements made in her offense report; and an affidavit from a physician stating that after he reviewed Mosley's medical records, he could find no evidence of any injury.

With his response to White's motion for summary judgment, Mosley submitted his unsworn affidavit and four unsworn affidavits from his co-inmates pursuant to 28 U.S.C. § 1746.[2] He submitted his affidavit attesting to the facts

---

[1] Pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), the district court conducts a hearing to remedy inadequacy in a prisoner's pleadings. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). Traditionally, a *Spears* hearing and the use of a questionnaire help the court "bring into focus the factual and legal bases of prisoners' claims." *Id.* (citation and internal quotation marks omitted).

[2] Section 1746 states:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of

No. 09-41091

of his case; Chandler's affidavit, who was present during the incident, confirming Mosley's recitation of the facts; Green's affidavit stating that he noticed that the left side of Mosley's face and his left eye were swollen and discolored and offered Mosley antibiotic cream; an affidavit from Donald Ray Briscoe, stating that White previously assaulted him; and an affidavit from Richard V. Coston, stating that White previously assaulted him also. Additionally, Mosley submitted his grievance forms.

After reviewing the evidence, the magistrate judge granted White's motion for summary judgment on qualified immunity grounds. The district court, subsequently, adopted the magistrate judge's report and recommendation.[3] Mosley appealed. For the following reasons, we AFFIRM the district court's judgment.

---

the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).

> (Signature)".

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

> (Signature)".

[3] Because the district court adopted the magistrate judge's reports and recommendations in full, our future references will be to the district court.

5

No. 09-41091

## II.

We review a grant of summary judgment *de novo*, applying the same standard as does a district court. *BellSouth Telecoms., Inc. v. Johnson Bros. Corp.*, 106 F.3d 119, 122 (5th Cir. 1997). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A movant can make the requisite showing by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." *Id*. 56(c)(1). The movant can also make the requisite showing by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. 56(c)(2).

Typically, the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal quotation marks and citation omitted). However, "[a] qualified immunity defense to § 1983 liability alters the usual summary judgment burden of proof; once an official pleads the defense of qualified immunity in a § 1983 action, the burden then shifts to the plaintiff." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see also Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Nonetheless, we construe all of the evidence and reasonable inferences deduced therefrom in the light most favorable to the nonmoving party. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009); *see also Brown*, 623 F.3d at 253 ("The plaintiff bears the burden of negating qualified immunity, . . . but all inferences are drawn in his favor." (citation omitted)).

## III.

On appeal, we consider whether the district court erred when it dismissed

No. 09-41091

Mosley's excessive force claim pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). We also address the district court's alternative holding that Mosley's claims should be dismissed because White was entitled to qualified immunity.

**A.**

The district court *sua sponte* determined that, because Mosley received a disciplinary case and was found guilty, his § 1983 excessive force claim should be dismissed with prejudice pursuant to the Supreme Court's decisions in *Heck* and *Edwards*. We disagree.

Under *Heck*, a plaintiff in a § 1983 action may not recover damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless he "prove[s] that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. In *Edwards*, the prisoner sought § 1983 damages and equitable relief for a procedural defect in a prison's administrative process. 520 U.S. at 643. The Court applied *Heck* because the administrative action taken against the plaintiff could affect credits toward release based on good time served. *Id.* at 646–48; *see also Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (applying *Heck* to a challenge to disciplinary conviction that resulted in the loss of good time credits).

In *Muhammad v. Close*, 540 U.S. 749, 751 (2004), the Supreme Court reiterated that *Heck* is not "implicated by a prisoner's challenge that threatens no consequence for his [underlying] conviction or the duration of his sentence." Muhammad had not lost any good time credits in conjunction with his disciplinary conviction. *Id.* at 752–53; *see also Mahogany v. Stalder*, 242 F. App'x 261, 263 (5th Cir. 2007) (holding claim for damages arising from failure

to receive written statement of evidence relied on in disciplinary proceeding was not barred by *Heck* and *Edward* because such damages go to the deprivation of civil rights, not the deprivation of good time credits).

Like the prisoner in *Muhammad*, Mosley does not challenge the length of his confinement, seek the restoration of good time credits, or seek the expungement of a disciplinary conviction that resulted in the loss of good time credit. Success in the instant action would not affect the validity of Mosley's underlying conviction or the duration of his sentence. *See Muhammad*, 540 U.S. at 751 & n.1 (noting that "[t]he assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules."). Therefore, the district court erred in determining that his excessive force claim was barred by *Heck* and *Edwards*. *See Muhammad*, 540 U.S. at 754–55. Now, we turn to the district court's alternative holding that Mosley's claims should be dismissed because White was entitled to qualified immunity.

**B.**

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) (citation and internal quotation marks omitted). Evaluating qualified immunity is a two-step process. First, we determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. *See Siegert v. Gilley*, 500 U.S. 226, 231–32 (1991). If the court determines that there was a constitutional violation, the court moves to the second step, which involves "determining whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. *Lytle*, 560 F.3d at 410. As previously explained, qualified immunity in the summary judgment context shifts the

burden of proof to the plaintiff. *Brown*, 623 F.3d at 253. Thus, in order to rebut White's qualified immunity defense, Mosley must establish that (1) the official's allegedly wrongful conduct was excessive force in violation of the Eighth Amendment and (2) a genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Id.* We conclude that Mosley has not provided sufficient evidence that White's conduct was in violation of the Eighth Amendment, and thus, the district court did not err in granting White's motion for summary judgment.

The well-established rule is that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In the context of an allegation of the use of excessive force by a prison official, the Supreme Court explained that " the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 9. To this end, an excessive force claim has both a subjective and an objective component. *Id.* at 8–9. The subjective component requires the plaintiff to establish that the defendant acted maliciously and sadistically in an "unnecessary and wanton infliction of pain." *Id*. at 8. To make this determination, a court should consider the need for the application of force; the relationship between the need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. *Id*. at 6.

The objective component requires the plaintiff to establish that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id*. at 8. Thus, a party's claim must allege more than a *de minimis* use of physical force in order to state a *prima facie* case of an Eighth Amendment violation. *Eason v. Holt*, 73 F.3d 600, 604 n.24 (5th Cir. 1996). The *de minimis* use of physical force is excluded from "constitutional recognition," unless it is of

No. 09-41091

a sort "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 10 (citations and internal quotation marks omitted). Furthermore, it is well-established in this Circuit that, "to support an Eighth Amendment excessive force claim[,] a prisoner must have suffered from the excessive force more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).

In sum, courts considering a prisoner's excessive force claim must determine (1) whether the defendant acted maliciously and sadistically in an "unnecessary and wanton infliction of pain" and (2) whether the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* If a party fails to meet either of these requirements, there is not a valid Eighth Amendment claim. *Eason*, 73 F.3d at 601–02. Here, even assuming that Mosley has established the subjective component of the Eighth Amendment analysis, he has not established the objective part of the inquiry. Accordingly, our analysis centers on the objective component—whether the plaintiff established that the alleged wrongdoing was objectively "harmful enough" to constitute a constitutional violation." *Hudson,* 503 U.S. at 9.

Analyzing the objective component of Mosley's Eighth Amendment claim, the district court determined that Mosley's failed to establish that his injuries were constitutionally cognizable. In reaching its determination, the district court relied on our decisions in *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) and *Gomez.*

In *Siglar*, the prisoner alleged that a guard stopped him in the hall of his prison unit while returning from breakfast. 112 F.3d at 193. The guard directed the prisoner to face the wall while she searched him. *Id.* She found a biscuit in his jacket pocket and called for backup. *Id.* The backup officer then, "[w]ithout provocation, . . . twisted Siglar's arm behind his back and twisted Siglar's ear."

*Id.* "Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident." *Id.* There was no evidence in the record that Siglar sought or received medical treatment for his injuries or that he suffered from a long term injury. *Id.* at 193. We affirmed the dismissal of his complaint as frivolous, concluding that his bruised ear, lasting for three days, was *de minimis* and that it was not a "physical injury" under § 1997e(e). *Id.* at 193–94.

By contrast, in *Gomez*, a prisoner alleged that he was knocked down, without provocation, that his head struck the concrete floor, his face was then scraped against the floor, he was punched in the face by two officers using their fists for about five minutes, and a third officer then kicked him in the face and head, after which one of the two officers continued to hit him with his fist. 163 F.3d at 924–25. The defendant's summary judgment evidence included an "Inmate use of force injury report" and a medical report that the prisoner was injured and treated two days after the incident for abrasions. *Id.* at 922. The court noted that its precedent had no categorical requirement that to state an Eighth Amendment claim the physical injury be significant, serious, or more than minor. *Id.* at 924. The court declined to find that the injuries, "'cuts, scrapes, contusions to the face, head, and body,'" were no more than *de minimis* as a matter of law and vacated the district court's grant of summary judgment. *Id.* at 924–25.

Arguably the injuries in this case—momentary blindness, cuts and abrasions in and around the eye, and an infected eye—fall somewhere between the injuries at issue in *Siglar* and the injuries at issue in *Gomez*. However, Mosley has not provided sufficient evidence that his injuries were constitutionally cognizable such that his claims would survive summary judgment. For example, in *Gomez* the plaintiff provided the court with an inmate use of force report, as well as a medical report indicating that he was

injured and was treated for those injuries.  Here, the record is devoid of such evidence.  In response to White's motion for summary judgment, as previously explained, Mosley provided the district court with his affidavit and those of his co-inmates and his grievance reports.  Although we recognize that the affidavits and reports constitute valid summary judgment evidence, FED. R. CIV. P. 56(c)(4), we have explained that without more, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" and defeat a motion for summary judgment.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  As Mosley has not met his evidentiary burden that his injuries were objectively "harmful enough" to constitute a constitutional violation, he fails to establish that White's conduct constitutes a violation of the Eighth Amendment.  Thus, the district court did not err in granting White's motion for summary judgment.  *Eason*, 73 F.3d at 601–02.

## IV.

Accordingly, we AFFIRM the district court's judgment, dismissing Mosley's claim as White is entitled to qualified immunity.