HIGGINBOTHAM, J.
This consolidated matter concerns damage to an office building after a main water line was unintentionally cut by a utility company, Entergy Gulf States Louisiana, L.L.C. ("Entergy"), during underground utility work for a road-expansion project ("the project") in Baton Rouge, Louisiana. When Entergy was dismissed from the litigation by means of a partial summary judgment granted in its favor, two appeals were filed: the first appeal was filed by Baton Rouge Water Works Company ("BRWW") and the second appeal was filed by the owner of the office building that was damaged, Cost Segregation Services, Inc. ("CSS"), along with its insurer, Continental Casualty Company ("Continental").
BACKGROUND
This matter is before us for review of a motion for summary judgment. Consequently, the facts have not been fully developed. However, for the purpose of this review, the following facts are essentially undisputed. The project at issue in this *584 litigation involved relocating and adding underground utility lines in order to improve/expand Siegen Lane. On April 27, 2010, Entergy was engaged in underground directional boring work that was necessary for relocating a six-inch gas main line in the vicinity of CSS's office located at 10343 Siegen Lane. During the boring work, Entergy unintentionally struck BRWW's main water line, causing the water line to rupture and resulted in both water and sewage to flow into CSS's office, damaging the office, as well as office equipment, furniture, computers, and the surrounding property. CSS settled its claim with Continental, its business interruption insurer. CSS and Continental then filed a petition for subrogation and damages on April 25, 2011, alleging negligence. The lawsuit named defendants: Entergy, the City of Baton Rouge's Department of Public Works/Parish of East Baton Rouge ("City/Parish"), and CSRS, Inc., the contractor for the project. Continental/CSS later amended the petition to remove CSRS as a defendant and to add BRWW as a defendant, again alleging negligence.[1]
After several years of discovery, Entergy moved for summary judgment with respect to the claims asserted by Continental/CSS. Entergy maintained that it had requested "locates" of all underground utilities prior to beginning its work of installing/relocating the gas line, as required by the Louisiana Underground Utilities and Facilities Damage Prevention Law, La. R.S. 40:1749.11, et seq. , (hereafter referred to as the "LA One-Call Law"). Because Entergy complied with the LA One-Call Law, Entergy argued that it was entitled to statutory immunity and, therefore, summary judgment dismissal of Entergy was appropriate since there was no proof of a breach of any duty. Continental/CSS and BRWW all opposed Entergy's motion for summary judgment, but after a hearing on the matter, the trial court granted a partial summary judgment in favor of Entergy, dismissing Entergy with prejudice.[2] In oral reasons for judgment, the trial court found that Entergy's compliance with the LA One-Call Law and its reliance on the location markings made by BRWW revealed that Continental/CSS and BRWW could not prove a breach of any duty owed by Entergy. Continental/CSS and BRWW appealed, essentially arguing that Entergy is not automatically absolved of liability for damages simply by notifying LA One-Call of the excavation, because there remained a genuine issue of material fact as to whether Entergy failed to maintain a safe clearance zone around BRWW's water main, which caused Continental/CSS's damages.
SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. Lieux v. Mitchell , 2006-0382 (La. App. 1st Cir. 12/28/06), 951 So.2d 307, 314, writ denied, 2007-0905 (La. 6/15/07), 958 So.2d 1199. In ruling on a motion for *585 summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Id. at 765-766.
A party may move for a summary judgment for all or part of the relief for which he has prayed. La. Code Civ. P. art. 966(A)(1).[3] A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. La. Code Civ. P. art. 966(E). However, a summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. Code Civ. P. art. 966(F).
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. Code Civ. P. art. 966(D)(2).
When a motion for summary judgment is made and supported as provided in La. Code Civ. P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. Code Civ. P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. Code Civ. P. art. 967(B). Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Larson v. XYZ Ins. Co. , 2016-0745 (La. 5/3/17), 226 So.3d 412, 417.
DISCUSSION
According to the provisions of the LA One-Call Law, anyone who engages in excavation operations (such as Entergy in this case) must first ascertain the specific location of all underground facilities in the area that would be affected by the proposed excavation via a call to the notification center (known as LA One-Call) at least forty-eight hours, but not more than one hundred twenty hours, prior to the excavation. See *586 La. R.S. 40:1749.13(A) and (B). Once the call is made to LA One-Call, the various utility operators are notified and given a "mark by" date by which the utility operators must mark the locations of their underground lines, cables, etc., so the excavator will not damage the underground utilities.[4] The markings are "deemed good as long as visible but not longer than twenty calendar days, including weekends and holidays, from the 'mark by' time." See La. R.S. 40:1749.14(C)(1)(a) and (b)(iii). Further, an excavator "shall use all reasonable and prudent means, within common industry practice , to protect and preserve all marks of the underground utility or facility." La. R.S. 40:1749.14(C)(1)(b)(iv) (emphasis added).
In addition to the notification requirements, each excavator shall plan the excavation to avoid damage and shall maintain a safe clearance between the underground utilities and the cutting edge of the excavating equipment. See La. R.S. 40:1749.16(1) and (2). The specific location of the underground facilities is defined as an area not wider than the width of the underground facility or utility as marked plus eighteen inches on either side (a/k/a the safe clearance zone). See La. R.S. 40:1749.14(D). We also note that pursuant to La. R.S. 40:1749.14(E)(2), the immunity provided to excavators who have complied with the notice provisions of the LA One-Call Law "shall not apply to civil liability for damages caused by the negligence of the excavator[.]" Additionally, the provisions of the LA One-Call Law "shall not affect any civil remedies for personal injury or property damage[.]" La. R.S. 40:1749.21(A).
Thus, Entergy's argument that it is entitled to immunity since it called LA One-Call before excavating is without merit. Furthermore, if the evidence offered in opposition to Entergy's motion for summary judgment reveals any possible negligence on the part of Entergy that caused damage to Continental/CSS, then Entergy's potential liability for damages remains a genuine issue of material fact for trial. See Faucheaux v. Terrebonne Consol. Government , 615 So.2d 289, 292-293 (La. 1993).
Louisiana courts resolve most negligence cases by employing a duty/risk analysis, where a plaintiff must prove five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard of care; (2) whether the defendant's conduct failed to conform to the appropriate standard of care; (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries/damages; (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries/damages; and (5) whether the plaintiff was damaged. Milbert v. Answering Bureau, Inc. , 2013-0022 (La. 6/28/13), 120 So.3d 678, 687-688. The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law. Id. at 688. Simply put, the inquiry is whether the plaintiff has any law-statutory, jurisprudential, or arising from general principles *587 of fault-to support the claim. Bowman v. City of Baton Rouge/Parish of East Baton Rouge , 2002-1376 (La. App. 1st Cir. 5/9/03), 849 So.2d 622, 627, writ denied, 2003-1579 (La. 10/3/03), 855 So.2d 315.
Our analysis of the LA One-Call Law reveals that an excavator such as Entergy has two distinct statutory duties. The first duty is to notify LA One-Call of the proposed excavation in order to ascertain the specific location of the affected utilities prior to the excavation, and the second duty is to use all reasonable and prudent means to protect and preserve the marked utility within the safe clearance zone of eighteen inches on either side of the mark. See La. R.S. 40:1749.14 and La. R.S. 40:1749.16. See also BellSouth Telecommunications, Inc. v. Eustis Engineering Co., Inc. , 2007-0865 (La. App. 4th Cir. 12/19/07), 974 So.2d 749, 752 ; Bell s outh Telecommunications, Inc. v. Johnson Bros. Corp. of Louisiana , 1995 WL 384513, *1 (E.D. La. 1995).
In the instant case, it is undisputed that Entergy notified LA One-Call prior to the proposed excavation. It is also undisputed that pursuant to the notice, BRWW sent a locator to mark the location of BRWW's underground water main line. Therefore, Entergy had not breached its first duty. However, it is unclear as to whether Entergy used all reasonable means to protect the marked water main line within the safe clearance zone, despite the clear duty that an excavator must inform itself of the location of underground utilities. See South Central Bell Telephone Co. v. Sewerage and Water Board of New Orleans, 94-1648 (La. App. 4th Cir. 3/16/95), 652 So.2d 1090, 1094, writ denied, 95-0949 (La. 5/19/95), 654 So.2d 1090. After reviewing the deposition testimony excerpts offered in support of and in opposition of Entergy's motion for summary judgment, we find that genuine issues of material fact remain regarding the second duty owed by Entergy as to whether any breach of that duty was the legal cause of the damage to Continental/CSS.
According to the deposition testimony of Entergy's workers that were involved in the excavation procedure, Derek Calvin and Larry Russo, BRWW's "locates" were clearly marked and Entergy bore outside of the safe clearance zone away from the marked water main line. However, the testimony of Entergy's workers varied on the size of the safe clearance zone, which was anywhere from ten inches to eighteen inches from the locate marker. They also testified that BRWW's locate was obviously mismarked since Entergy broke the water main line when they were removing the bore.
BRWW's locator, Brian Williams, testified in his deposition that he located the water main line based upon his personal knowledge of the area, and he also walked through the area with Entergy's workers on the morning of the excavation. BRWW's locator insisted that he marked the proper location of the water main line, because he was working on this particular project "almost every day." However, Mr. Williams acknowledged that he did not take any actual measurements when locating the water main line, and instead he relied on his memory from working in the area and knowing the location of the above-ground valve. He further testified that there was no verification system in place to ensure that the locate mark was correct.
A BRWW maintenance foreman, Travis Harrison, testified by deposition that he uses a variety of methods to locate lines such as a computer system, GPS coordinates, tape measures, probing rods, field notes, tracing wires, and landmarks. He also testified that this particular water main line had a tracing wire, so that method *588 could have been an option for the locator to use when locating the line. The deposition testimony of BRWW's construction supervisor, Donald Kozan, Jr., revealed that a standard industry practice is to "spot the main" water line by physically digging around the locate marker by hand, with a shovel, in order to visualize the line before the boring procedure begins with the drilling equipment. He explained that Entergy should have performed a spot/dig before they bored so they would know exactly where the line was located, but that was not done in this case. He also testified that he saw where the water main line was located, and he determined that BRWW's locate paint lines were properly marked.
After a de novo review of the documents filed in support of and in opposition to the summary judgment, along with all documents that were not objected to, we find that genuine issues of material fact preclude the entry of summary judgment in favor of Entergy. We specifically conclude that Continental/CSS and BRWW presented evidence sufficient to create genuine issues of material fact regarding Entergy's possible violation of the LA One-Call Law duty to use all reasonable and prudent means, within common industry practice (such as spot digging by hand/shovel before mechanically boring so as to visualize the line), in order to protect and preserve all of the underground utility lines during the excavation project. Additionally, there are genuine issues of material fact as to whether any purported breach of duty by Entergy caused damage to Continental/CSS. Therefore, the trial court erred in granting the partial summary judgment in favor of Entergy and dismissing Entergy from the litigation.
CONCLUSION
Based on our analysis, we reverse the partial summary judgment rendered in favor of Entergy, and we remand the matter to the trial court for further proceedings. All costs of these consolidated appeals are assessed to Entergy Gulf States Louisiana, L.L.C.
REVERSED AND REMANDED.

Another subrogation lawsuit arising out of the same cause of action, America First Insurance Company v. City of Baton Rouge, et al , (Number 601,271), was filed a few days after the Continental and CSS petition (Number 600,987) in the Nineteenth Judicial District Court. The cases were consolidated for trial by an order signed on August 18, 2011. Some of the other defendants have been dismissed from the litigation; however, those dismissals are not at issue in these consolidated appeals.

Because the judgment dismissed all of the remaining claims against one defendant, Entergy, the judgment is a partial final judgment subject to immediate appeal pursuant to La. Code Civ. P. art. 1915(A)(1) without necessity of the trial court's certification as such.

Since Entergy's motion for summary judgment was filed on August 3, 2016, we apply the version of La. Code Civ. P. art. 966, as amended by La. Acts 2015, No. 422, § 1, effective January 1, 2016.

The purpose of the LA One-Call Law is to promote the protection of property and protect the public from damage, death, or injury resulting from the underground utilities being damaged. See La. R.S. 40:1749.11(B) ; Weatherly v. Fonseca & Associates, L.L.C. , 2010-495 (La. App. 3d Cir. 10/6/10), 48 So.3d 394, 395-396, writ denied, 2010-2497 (La. 1/7/11), 52 So.3d 887. The legislation is intended to act as a penal safety provision, with penalties imposed whether or not damages have occurred. The LA One-Call Law expressly negates any legislative intent to provide a comprehensive civil liability scheme to the exclusion of Louisiana tort principles. See BellSouth Telecommunications, Inc. v. Johnson Bros. Corp. of Louisiana , 106 F.3d 119, 124-125 (5th Cir. 1997).